UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

TRUSTEES OF THE NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS
PENSION FUND, WELFARE FUND,
ANNUITY FUND, and APPRENTICESHIP,
JOURNEYMAN RETRAINING,
EDUCATIONAL AND INDUSTRY FUND,
TRUSTEES OF THE NEW YORK CITY
CARPENTERS RELIEF AND CHARITY
FUND, THE NEW YORK CITY AND
VICINITY CARPENTERS LABOR-
MANAGEMENT CORPORATION, and the
NEW YORK CITY DISTRICT COUNCIL
CARPENTERS,

                    *Plaintiffs,*

        -against-

TONY NGUYEN,

                    *Defendant.*
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/17/2017

15 Civ. 5399 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs in the above-captioned case (collectively, "Plaintiffs") are employer and

employee trustees of multi-employer labor management trust funds (the "Funds") which are

subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendant Tony

Nguyen ("Defendant" or "Nguyen") is the sole member, officer and director of Nguyen Custom

Woodworking LLC ("NCW"). Plaintiffs seek to hold Nguyen personally liable for damages

caused by his use of assets in NCW's possession for purposes other than remitting requisite

contributions to the Funds.[1]  The parties now cross-move for partial summary judgment,

pursuant to Fed. R. Civ. P. 56, on three discrete issues: whether Nguyen can be held personally

liable; whether an arbitration award is binding on Nguyen to the extent it quantifies damages for

NCW's unpaid contributions covering the period June 25, 2010 through September 30, 2013;

and whether Nguyen has the burden of proof regarding damages for NCW's unpaid contributions

covering two additional time periods.

For the following reasons, Plaintiffs' motion is GRANTED on all three issues, and

Defendant's motion is DENIED.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a).  The Court "resolve[s] all ambiguities and draw[s] all reasonable inferences in

the light most favorable to the nonmoving party." Summa v. Hofstra Univ., 708 F.3d 115, 123

(2d Cir. 2013).  Summary judgment is warranted where "the record taken as a whole could not

lead a rational trier of fact to find for the non-moving party." Smith v. Cnty. of Suffolk, 776

F.3d 114, 121 (2d Cir. 2015) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986)).

## BACKGROUND

Plaintiffs are fiduciaries of the Funds within the meaning of ERISA § 3(21), 29 U.S.C. §

1002(21).  Pl. 56.1(a) Stmt., ECF 24 ¶ 1.  NCW was a party to an Independent Shop Agreement

and an Independent Building Construction Agreement. Id. at ¶ 5; see ECF 25 Ex. 1 at ¶ 10, Ex. 2

---

[1] The Complaint also alleges fraudulent conveyances under sections 273 and 278 of the New York Debtor &
Creditor Law, but the cross-motions do not address these claims. See ECF 1 at ¶¶ 1, 43–48.

at ¶ 10, Ex. 4 at 19–23, Ex. 5, Ex. 6. Nguyen signed both agreements as NCW's principal member. Pl. 56.1(a) Stmt., ECF 24 ¶¶ 2–4; ECF 25 Ex. 5, Ex. 6; ECF 33 at ¶ 7.[2]

The two agreements require NCW to make hourly contributions for specified work (the "Covered Work"), and to furnish its books and records to the Funds for audits upon request. Pl. 56.1(a) Stmt., ECF 24 ¶¶ 6–7.

Each of the Funds is governed by a trust agreement; the terms of the trust agreements are incorporated by reference into the two agreements which were in effect as of the effective date of June 26, 2007. *Id.* at ¶¶ 26–28; ECF 25 Ex. 5 at Preamble, Art. IX Section 12, Ex. 6 at Art. XV Section 3, Art. XXI.

The Third Amendments of each trust agreement, all adopted on March 22, 2007, define the "assets of [each] Fund" to include not only the money that employers have contributed, but also "the sums of money . . . which are due and owing to the Fund by the Employers as required by the applicable collective bargaining agreement." Pl. 56.1(a) Stmt., ECF 24 ¶¶ 29–32; *see* ECF 25 Ex. 11 at Third Amendment, Ex. 12 at Third Amendment, Ex. 13 at Third Amendment, Ex. 14 at Third Amendment. The Independent Shop Agreement additionally provides that "[i]f during the life of this Agreement, the Trustees of any fringe benefit fund adopt a rule which provides for personal liability of an owner of an Employer cooperation [sic] to pay fringe benefit contributions due under this Agreement, such Rule of Trustees will not be a basis for enforcing personal liability for said payment under this Agreement." ECF 25 Ex. 5 at Art. IX Section 12.

The Funds conducted an audit of NCW's books and records for the period covering June

---

[2] Nguyen claims he does not read or write English well and was "unable to read and understand the significant and serious obligations I had entered into in signing" the CBAs. Nguyen Decl. at ¶¶ 5, 7. But Nguyen testified in his deposition that he consulted with counsel prior to or during the signing of the two agreements. *See* ECF 25 Ex. 4 at 19, 24.

25, 2010 through September 30, 2013 (the "First Audit Period"), which showed a delinquency of $88,425.84, which NCW failed to pay despite demand. Pl. 56.1(a) Stmt., ECF 24 at ¶¶ 8–10. The Funds initiated arbitration to resolve the dispute, as permitted. *Id.* at ¶¶ 11–14. At the April 1, 2015 arbitration hearing, which Nguyen attended with NCW's counsel, the Funds presented evidence of the delinquency; NCW did not present any evidence. *Id.* at ¶ 15. The arbitrator issued an award on April 3, 2015 in favor of the Funds, finding that NCW violated the terms of the agreements and ordering NCW to pay the Funds $125,201.29 (the "Arbitration Award").[3] *Id.* at ¶¶ 12, 16. NCW has not paid any of the Arbitration Award, despite demand. *Id.* at ¶ 17.

Additional audits for the periods covering October 1, 2013 through May 26, 2015 (the "Second Audit" and "Second Audit Period") and May 27, 2015 through September 24, 2015 (the "Third Audit" and "Third Audit Period") showed that NCW employees performed Covered Work during these periods but NCW made no contributions. *Id.* at ¶¶ 19–25. Nguyen disputes the dollar amounts shown in both the Second Audit ($1,880,925.76) and the Third Audit ($363,600.14), *see id.* at ¶¶ 21, 24; Def. 56.1(a) Stmt., ECF 32 ¶¶ 21, 24, but agrees that NCW has not paid any portion of these delinquencies. *See* Pl. 56.1(a) Stmt., ECF 24 ¶¶ 22, 25; Def. 56.1(a) Stmt., ECF 32 ¶¶ 22, 25.

Nguyen admits that he was the "only person currently or previously employed or engaged by NCW who has or had authority to withdraw funds from one or more of NCW's bank accounts." ECF 25 Ex. 3 at Response 6. Nguyen also testified that he used money in NCW's possession to pay parties other than the Funds; his own personal expenses; and undocumented

---

[3] This sum consisted of the $88,425.84 principal delinquency identified by the First Audit Period plus $9,558.24 of interest thereon; $17,800.26 of liquidated damages; $227.29 of interest on other late payments; $1,639.66 of contributions to an industry promotional fund; $400 of court costs; $1,500 of attorneys' fees; the arbitrator's fee of $500; and $5,150 of audit costs. Pl. 56.1(a) Stmt., ECF 24 ¶ 16.

4

immigrant employees.[4] *See* ECF 25 Ex. 4 at 28–29, 32–41; *see also* Pl. 56.1(a) Stmt., ECF 24 ¶¶ 34–38.

NCW filed for relief under Chapter 11 of the Bankruptcy Code on May 26, 2015 in the United States Bankruptcy Court for the Southern District of New York. Pl. 56.1(a) Stmt., ECF 24 at ¶ 18.

Plaintiffs brought this action on July 13, 2015, alleging breach of fiduciary duty under ERISA § 409, as amended, 29 U.S.C. § 1109. ECF 1.

## DISCUSSION

### I.   Defendant's Personal Liability

ERISA § 409(a) provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by [ERISA] shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a). Unlawful withholding of plan assets constitutes such a breach.[5] *See* ERISA § 404(a)(1)(a), 29 U.S.C. § 1104(a)(1)(A) (fiduciaries must discharge plan duties exclusively to "provid[e] benefits to participants and their beneficiaries");

---

[4] For example, during the First Audit Period, Nguyen took at least $200,000 in cash from NCW to pay personal expenses, and that he took additional cash from NCW to pay at least $8,000 a week in wages to undocumented employees. Pl. 56.1(a) Stmt., ECF 24 at ¶¶ 35–36; *see also* ECF 25 Ex. 4 at 39–41. During the Second Audit Period, Nguyen cashed NCW checks totaling $1,638,378.97, approximately $1.2 million of which he used to pay wages to undocumented employees, and the remainder of which he used for personal expenses. Pl. 56.1(a) Stmt., ECF 24 at ¶¶ 37–38; *see also* ECF 25 Ex. 4 at 32–39.

[5] Nguyen argues that he cannot be personally liable because in determining whether unpaid contributions constitute plan assets, the Court must first apply New York law to determine whether the agreements impose personal liability on him as a signatory. *See* ECF 36 at 2–3, 9–12. But the majority of cases Nguyen cites to support this argument involve different theories of liability, such as breaches of § 301 of the Labor Management Relations Act or of ERISA § 502(d)(1) or § 512, or situations where plan documents do not define assets. *See id.* By contrast, here, Plaintiffs allege that Nguyen is liable under ERISA § 409(a)'s independent basis of personal liability in his fiduciary capacity, and that the plan documents specifically define the Funds' assets to include unpaid contributions. *See* ECF 1 at ¶¶ 1, 28–42; 29 U.S.C. § 1109(a). This inquiry is governed solely by federal law. *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188–89 (2d Cir. 2015).

5

*Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir. 2015). Thus, to hold Nguyen personally liable under § 409(a) of ERISA, 29 U.S.C. § 1109(a), Plaintiffs must demonstrate that (1) NCW's unpaid contributions constitute plan assets; and (2) Nguyen exercised sufficient control over the assets to make him an ERISA fiduciary. *See In re Halpin*, 566 F.3d 286, 290 (2d Cir. 2009).

    *A.   The Plan Assets Include Unpaid Employer Contributions*

    ERISA does not define "plan assets" but parties are "free to contractually provide" that such assets include unpaid employer contributions. *Halpin*, 566 F.3d at 287, 290 ("[I]n the absence of provisions to the contrary in the relevant plan documents, unpaid contributions are not assets of the plan."). Nguyen argues that "consistent with the court's rationale in *Halpin*, the trustees herein contracted for a different result protecting owners of any employer from personal liability for benefit fund contributions the 'Employer' might owe," and points to the Independent Shop Agreement's Art. IX, Section 12. [6]  ECF 36 at 9.  Unfortunately, Nguyen's reliance on *Halpin* conflates the inquiry of whether unpaid contributions constitute assets with the question of whether personal liability may be imposed.  Regardless, both the Independent Shop Agreement and the Independent Building Construction Agreement by their terms incorporate by reference the trust agreement terms that were in effect as of June 26, 2007, which include the Third Amendments that were in effect as of March 22, 2007. *See* ECF 25 Ex. 5 at Preamble, Ex. 6 at Art. XV Section 3, Ex. 11 at Third Amendment, Ex. 12 at Third Amendment, Ex. 13 at Third Amendment, Ex. 14 at Third Amendment.  The Third Amendments clearly define the "assets of [each] Fund" to include "the sums of money . . . which are due and owing to the Fund

---

[6] The Independent Building Construction Agreement does not contain any similar provision precluding subsequent personal liability. *See* ECF 25 Ex. 6. at Art. XV.

by the Employers as required by the applicable collective bargaining agreement." *See* ECF 25 Ex. 11 at Third Amendment, Ex. 12 at Third Amendment, Ex. 13 at Third Amendment, Ex. 14 at Third Amendment. This unambiguous language clearly demonstrates the parties' contractual agreement that any unpaid NCW contributions constitute plan assets. *See Halpin*, 566 F.3d at 287, 290.

### B. *Nguyen is an ERISA Fiduciary of NCW*

ERISA § 3(21)(A) provides that "a person is a fiduciary with respect to [an ERISA benefit] plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." § 29 U.S.C. § 1002(21)(A). "Congress intended ERISA's definition of fiduciary 'to be broadly construed' . . . [and] functional." *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (holding that an individual who signed checks for corporation and decided when creditors were paid was a fiduciary) (internal quotations and citations omitted); *see also Finkel v. Romanowicz*, 577 F.3d 79, 86 (2d Cir. 2009) (explaining that individuals "'responsibl[e] for determining which of the company's creditors would be paid or in what order' . . . or otherwise enjoy[] authority or control over the management of [] [p]lan assets" are fiduciaries) (internal quotations and citations omitted).

There is no dispute that Nguyen is NCW's only officer, member, and director. ECF 25 Ex. 3 at Responses 3–4. Further, Nguyen was, at all relevant times, the "only person currently or previously employed or engaged by NCW who has or had authority to withdraw funds from one or more of NCW's bank accounts." ECF 25 Ex. 3 at Response 6. Nguyen decided how to use this money; namely, to make payments to himself and parties other than the Funds. *See id.*; *see also* ECF 25 Ex. 4 at 28–29, 32–41.

7

Nguyen thus possessed sufficient discretionary "authority or control over the management of [] [p]lan assets," *Finkel*, 577 F.3d at 86, to be a fiduciary with respect to the plans within the meaning of ERISA § 3(21)(A), § 29 U.S.C. § 1002(21)(A). *See also Bricklayers*, 779 F.3d at 185, 189 (looking to ERISA's "expansive definition" of fiduciary to conclude that corporate defendant's "owner, officer, and shareholder" who "signed the CBA, reported the hours worked by union members to the plaintiff funds, and communicated with the auditor on the corporate defendant's behalf" was an ERISA fiduciary).

### C. Breach

The uncontested facts and documentary evidence in the record establish that Nguyen breached his ERISA-imposed fiduciary duty, and no rational trier of fact could conclude otherwise. NCW was a party to and bound by the agreements with the Union; those agreements require NCW to make specified hourly contributions to the Funds for Covered Work performed by its employees; the agreements incorporate the terms of the Funds' trust agreements, the Third Amendments of which define plan assets to include unpaid contributions; Nguyen was an ERISA fiduciary of NCW; and Nguyen used plan assets for other purposes than to make NCW's requisite contributions to the Funds, thereby breaching his fiduciary duty under ERISA § 404(a)(1)(a). *See Bricklayers*, 779 F.3d at 188 (finding that individual fiduciary breached duty where documentary evidence established that corporate defendant "failed to remit at least some contributions"). Nguyen is thus personally liable under ERISA § 409, 29 U.S.C. § 1109.

## II.   Damages

### A. The Arbitration Award for the First Audit Period is Binding on Nguyen

Collateral estoppel applies to arbitration awards and prevents relitigation of an issue "if (a) the identical issue was raised in the prior proceeding, (b) the issue in the prior proceeding was

actually litigated and decided, (c) there was a full and fair opportunity to litigate in the prior

proceeding, and (d) the issue previously litigated was necessary to support a valid and final

judgment on the merits." *Sathianathan v. Smith Barney, Inc.*, No. 04-CV-7122 (DAB), 2006

WL 538152, at \*17 (S.D.N.Y. Feb. 24, 2006); *see also Mitra v. Global Fin. Corp.*, No. 09-CV-

4387 (DLI), 2010 WL 1529264, at \*1 (E.D.N.Y. Apr. 15, 2010). "One who, though not a party

of record, controls in furtherance of his own self[-]interest the conduct of adjudicatory

proceedings by or against another is bound by the result of the proceeding." *Ritchie v. Landau*,

475 F.2d 151, 155 n.2 (2d Cir. 1973) (determining that company's stockholder and CEO who

"clearly participated as an active 'non party'" in company's arbitration and "effectively

controlled the development" of company's litigation would "probably be bound by the award

against" the company). "Trial courts have broad discretion in deciding when to permit the

offensive use of collateral estoppel." *Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245, 264

(S.D.N.Y. 2013). The doctrine is appropriately applied where "the litigation of a particular issue

has reached such a stage that a court sees no really good reason for permitting it to be litigated

again." *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 719 (2d Cir. 1993) (internal

quotations and citations omitted).

  The amount of NCW's unpaid contributions during the First Audit Period was raised,

"actually litigated and decided," and "necessary to support a valid and final judgment on the

merits" in the April 1, 2015 hearing; indeed, it was the sole issue at the arbitration.

*Sathianathan*, 2006 WL 538152, at \*17; *see* Pl. 56.1(a) Stmt., ECF 24 ¶¶ 13–16. Nguyen,

NCW's sole officer, director and member, attended the arbitration on behalf of NCW along with

NCW's counsel. Pl. 56.1(a) Stmt., ECF 24 ¶15. NCW did not present any evidence. *See id.*

Nguyen fails to provide any facts or other evidence which even suggest that he did not have a

"full and fair opportunity to litigate" the issue at that time. *Sathianathan*, 2006 WL 538152, at

\*17. Instead, Nguyen asserts that Plaintiffs are time-barred pursuant to New York Limited

Liability Company Law § 609.[7] *See* ECF 36 at 13–14. This argument is irrelevant, as Plaintiffs'

claims do not arise under state law; and unavailing, as ERISA preempts "any and all State laws

insofar as they . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a); *see also Romney

v. Lin*, 94 F.3d 74, 78–79 (2d Cir. 1996) (finding that ERISA preempted a New York Business

Corporation Law § 630[8] cause of action).

There is no genuine issue of material fact on this issue; Nguyen is bound by the

Arbitration Award.

### B. Second and Third Audit Periods

ERISA imposes a duty on employers to maintain records of hours worked by employees.

29 U.S.C. § 1059(a)(1); *see La Barbera v. J.D. Collyer Equip. Corp.*, 337 F.3d 132, 136 (2d Cir.

2003). "When a fund seeks delinquent contributions, it has the initial burden of showing that the

employer's records are inadequate . . . If it makes this showing, it is entitled to damages unless

the employer offers proof of the exact hours of work performed or evidence that negatives the

reasonableness of the inference to be drawn from the funds' evidence." *LaBarbera v. A.

Morrison Trucking, Inc.*, 197 Fed. Appx. 18, 21 (2d Cir. 2006) (internal citations and quotations

omitted); *see also Jacobson v. Empire Elec. Contractors, Inc.*, 339 Fed Appx. 51, 53 (2d Cir.

2009).

The parties agree that NCW failed to make any contributions during the Second and

---

[7] This statute permits employees to hold an LLC's ten largest members personally liable for services performed, and requires written notice of intent to initiate such action within 180 days from the date of service. *See* New York Limited Liability Company Law § 609.

[8] This provision performs essentially the same function as New York Limited Liability Company Law § 609 in that it allows employees to hold a corporation's ten largest shareholders personally liable for services rendered. *See* New York Business Corporation Law § 630.

Third Audit Periods, but disagree as to the amounts owed to the Funds. *See* Pl. 56.1(a) Stmt., ECF 24 ¶¶ 21, 24; Def. 56.1(a) Stmt., ECF 32 ¶¶ 21, 24.

Plaintiffs assert that Nguyen did not maintain accurate records, and that consequently, "[a]t least for the Second Audit Period, the auditor was forced to estimate the number of hours worked . . . [and for both the Second and Third Audit Periods] to choose between the hourly contribution rates prescribed by the [ISA] . . . and the higher . . . rates prescribed by the [IBCA]." ECF 23 at 9; *see also* Powers Decl. at ¶¶ 5–6, Ex. 9, Ex. 10. Plaintiffs thus seek a ruling that Nguyen shall have the burden at any subsequent evidentiary hearing or trial to disprove the delinquency amounts revealed by the Second and Third Audits. ECF 23 at 9–11.

Nguyen provides no evidence to rebut Plaintiffs' assertion, but instead claims that "the audits covering the Second Audit Period and the Third Audit Period are completely overstated and do not accurately reflect what may be due and owing." Nguyen Decl. at ¶ 10.

Nguyen testified that he cashed numerous checks from NCW to pay personal expenses. ECF 25 Ex. at 32–41. Moreover, he testified that several of NCW's employees to whom he made cash payments, during the Second and Third Audit Periods, "didn't have proper paperwork" to work legally in the country, and as such, he "[could not] really put them on the payroll." ECF 25 Ex. 4 at 36:11–13, 38:22–24. These facts presented by Plaintiffs are sufficient to show that NCW's records are inadequate. *LaBarbera*, 197 Fed. Appx. at 21. Nguyen must bear any subsequent burden of proof regarding damages for the Second and Third Audit Periods; he must offer evidence to rebut or negate the "reasonableness of the inference" of the delinquency amounts revealed by the Second and Third Audits. *Id.*

## CONCLUSION

The Court GRANTS Plaintiffs' motion for partial summary judgment on the three

enumerated issues, and DENIES Defendant's cross-motion.

The parties are directed to appear at a status conference at 3:30 p.m. on Tuesday, March

21 in Courtroom 14C to set a date for trial. The Clerk is directed to terminate all open motions.

Dated: New York, New York      SO ORDERED
      February 17, 2017

                                  PAUL A. CROTTY
                                  United States District Judge